United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN TULL,<br>Plaintiff,<br>v.<br>BROOKE JENKINS, et al.,<br>Defendants. | Case No. 24-cv-06599-SK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Regarding Docket No. 48 |

This matter comes before the Court upon consideration of the motion for summary judgment filed by Defendants San Francisco District Attorney Brooke Jenkins[1] and the City and County of San Francisco ("the City") (collectively, "Defendants"). (Dkt. No. 48.) This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367. All parties consented to magistrate judge jurisdiction. (Dkt. Nos. 6, 15.) Upon careful consideration of the parties' papers, relevant legal authority, case record, and oral argument, the Court GRANTS IN PART and DENIES IN PART Defendants' motion for summary judgment for the reasons set forth below.

## BACKGROUND

### I. FACTUAL BACKGROUND[2]

In November 2017, the San Francisco District Attorney's Office (hereinafter "SFDA") hired Plaintiff Steven Tull ("Plaintiff") as an investigator in the Bureau of Investigations ("Bureau"). (Dkt. No. 51-1, Declaration Matthew T. Norman ("Norman Decl."), Ex. 1, Deposition of Steven Tull ("Tull Dep.") at 75:1–17.) During his onboarding process, Plaintiff signed an appointment processing form that identified his position as "exempt" and a separate notification form acknowledging his "exempt" status. (Dkt. No. 48-2, Frenzen Decl. ¶ 2, Ex. A,

[1] Jenkins is named in her official capacity, not as an individual defendant. (Dkt. No. 48-2, Declaration of Amy Frenzen ("Frenzen Decl."), Ex. F, Plaintiff's Amended Responses to the City's Requests for Admissions at 2–3.)

[2] Unless otherwise indicated, the facts included in the factual background are undisputed.

Deposition of Steven Tull ("Tull Dep.") at 75:1–76:19; Ex. B.) Plaintiff was assigned to the trial preparation unit assisting the Assistant District Attorneys in preparing their cases for trial. (Dkt. No. 48-2, Frenzen Decl. ¶ 2, Ex. A, Tull Dep. at 76:20–77:15.)

In December 2020, Plaintiff was promoted to Principal District Attorney Investigator by then-District Attorney Chesa Boudin, which provided Plaintiff the rank of "Captain." (*Id.* at 77:12–17.) During this promotion, Plaintiff again signed a form for his appointment acknowledging his "exempt" status. (*Id.* at 77:12–78:21; Dkt. No. 48-2, Frenzen Decl., Ex. C.) Plaintiff's promotion to Captain made Plaintiff the highest-ranking officer in the SFDA's Bureau which made him responsible for managing the Bureau's investigators and overseeing the Bureau's day-to-day operations. (Dkt. No. 48-2, Frenzen Decl. ¶ 2, Ex. A, Tull Dep. at 88:9–24.)

In November 2021, Plaintiff was promoted to Chief District Attorney Investigator. (*Id.* at 86:22–23; 87:13–17.) Plaintiff's duties and responsibilities did not change upon his promotion. (*Id.* at 88:9–18.) Again, Plaintiff signed a form for his appointment acknowledging that he was an exempt, at-will employee. (Dkt. No. 48-2, Frenzen Decl. ¶¶ 2, 5, Ex. A, Tull Dep. at 86:22–88:24; Ex. D.) After voters recalled District Attorney Boudin in June 2022, then-Mayor London Breed appointed Jenkins as District Attorney in July 2022. (Dkt. No. 48-1, Declaration of Brooke Jenkins ("Jenkins Decl."), ¶ 2.) In November 2022, voters elected Jenkins to a full term. (*Id.*)

In January 2023, Jenkins received complaints regarding Plaintiff's treatment of Captain Robert Guzman, Plaintiff's direct report in the Bureau. (Dkt. No. 48 at 11.)[3] Guzman reported that Plaintiff removed him from Jenkins's security detail following an argument he had with Plaintiff and that Plaintiff was using his proximity to Jenkins as a member of her executive protection team to threaten Investigators with transfers to other assignments or termination of employment. (Dkt. No. 48-1, Jenkins Decl. ¶ 4; Dkt. No. 48-2, Frenzen Decl. ¶ 26, Ex. X, Deposition of Brooke Jenkins ("Jenkins Dep.") at 26:3–28:15; 66:13–67:5.) On January 23, 2023, Jenkins met with Plaintiff to coach him on his behavior toward the SFDA investigative staff based on allegations of inappropriate yelling and poor treatment. (Dkt. No. 48-2, Frenzen Decl. ¶ 2, Ex. A, Tull Dep. at 205:1–20; Frenzen Decl. ¶ 26, Ex. X, Jenkins Dep. at 25:6–23; 67:24–68:23.)

[3] All citations to page numbers in docket filings refer to ECF-generated page numbers.

United States District Court
Northern District of California

On June 2, 2023, Plaintiff held a meeting with the Bureau's lieutenants and Plaintiff's supervisor Assistant District Attorney Don DuBain regarding Jenkins's decision to promote Andrea Moreland to lieutenant. (Dkt. No. 48-2, Frenzen Decl. ¶ 2, Ex. A, Tull Dep. at 120:7–121:11.) Defendants contend that Plaintiff yelled and berated the attendees, threatened to fire employees, and displayed other unprofessional behavior similar to the behavior that was the subject of Jenkins's earlier coaching of Plaintiff in January 2023. (Dkt. No. 48 at 12 (citing Dkt. No. 48-2, Frenzen Decl., Ex. A, Tull Dep. at 119:1–121:11; 127:24–129:20; 131:23–133:3; Ex. X, Jenkins Dep. at 57:16–25; 60:18–61:22).)

On June 5, 2023, "Managing Attorney"[4] Darby Williams informed Jenkins of a report she had received from Lieutenant Raymond Tang, who had attended the June 2, 2023 meeting with Plaintiff. (Dkt. No. 48 at 13.) Williams reported to Jenkins that Tang had described Plaintiff as angry and unhinged and that Tang claimed the lieutenants were fearful of Plaintiff and of losing their jobs. (Dkt. No. 48-2, Frenzen Decl. ¶ 6, Ex. E at CCSF_000464, CCSF_000506–07.)

In opposing Defendants' motion for summary judgment, Plaintiff did not provide any evidence denying Defendants' allegations regarding his behavior during the June 2, 2023 meeting and did not deny that he yelled at people during the meeting. However, Plaintiff testified that he thought that any claim by a lieutenant of refusing to work for a captain to be insubordination that should lead to termination of employment. (Dkt. No. 48-3, Frenzen Decl. Ex. A, Tull Dep. at 127:24-129:20.)

Defendants further assert that, after the June 2, 2023 meeting, Plaintiff's co-supervisor DuBain met with Jenkins to discuss Plaintiff's conduct and his treatment of the lieutenants. (Dkt. No. 48-2, Frenzen Decl. ¶ 6, Ex. E at CCSF_000462–63.)

On June 8, 2023, Guzman and Moreland informed Plaintiff that he was being placed on paid administrative leave pending an investigation, and they provided him a written notice of the allegations against him, including:

- Leading by intimidation including yelling, threatening adverse employment action, and abuse of authority;
- Misleading and being dishonest with the Appointing Officer, employees, and

[4] The parties do not identify the specific agency for which Williams worked.

potential candidates for employment regarding employment-related decisions;
- Directing a subordinate to withhold pertinent information from the Appointing Officer for an employment-related decision; and
- Sharing confidential personnel information with employees regarding assignments and potential promotive opportunities

(Dkt. No. 48-2, Frenzen Decl. ¶ 8, Ex. G; Dkt. No. 51-2, Norman Decl., Ex. 1, Tull Dep. at 50:19–55:12; 139:18–140:22.) There were no other details about Plaintiff's alleged wrongdoing in the letter. (*Id.*)

Julius DeGuia, Chief of the SFDA Criminal Division, investigated the allegations against Plaintiff. The City provided Plaintiff with a letter dated July 3, 2023, again notifying him of the same allegations of wrongdoing stated in the June 8, 2023 letter, notifying him of the date of his interview (July 11, 2023), and advising him that he could bring a representative to the interview. (Dkt. No. 48-2, Frenzen Decl. ¶ 12, Ex. K.) Again, there were no other details about Plaintiff's alleged wrongdoing in the letter. (*Id.*)

Defendants contend that DeGuia interviewed eighteen witnesses between June 13 and July 25, 2023, and reviewed several documents. (Dkt. No. 48 at 13.) Defendants further assert that all interviews were voluntary and not recorded, except for Plaintiff's interview on July 11, 2023, which was recorded and not voluntary. (Dkt. No. 48-2, Frenzen Decl. ¶ 6, Ex. E at CCSF_000458–459.) Plaintiff was represented by counsel during his interview. (Dkt. No. 48-2, Frenzen Decl. ¶ 2, Ex. A, Tull Dep. at 151:3–15.)

Unlike the investigations conducted for other investigators recently placed on administrative leave, the City Attorney's office did not conduct any interviews for Plaintiff's investigation. (Dkt. No. 51-1, Norman Decl., Ex. 5, Jenkins Dep. at 70:4–22.) Also, DeGuia knew that the Public Safety Officers Procedural Bill of Rights Act ("POBR"), Cal. Govt. Code §§ 3300 *et seq.*, was implicated but failed to familiarize himself with the POBR before investigating Plaintiff. (Dkt. No. 51-1, Norman Decl., Ex. 7, Deposition of Julius DeGuia ("DeGuia Dep.") at 19:21–20:14; 22:7–11.) Also, on July 3, 2023, SFDA Chief Administrative Officer Eugene Clendinen sent Plaintiff a communication indicating that Plaintiff "h[as] a right to representation and all rights afforded to [him under the] POBR including Cal Gov't Code Section 3303." (Dkt. No. 51-1, Norman Decl., Ex. 11.)

United States District Court
Northern District of California

In August 2023, DeGuia completed his investigation and prepared a report of his findings dated August 4, 2023. (Dkt. No. 48-2, Frenzen Decl. ¶ 6, Ex. E at CCSF_000564–67.) On August 10, 2023, SFDA Principal Human Resources Analyst Richard Ng sent an email to Plaintiff to schedule a meeting for the following day with Ng and Clendinen at 4:00 p.m. (Dkt. No. 48-2, Frenzen Decl. ¶ 13, Ex. L.) On the morning of August 11, 2023, at 7:41 a.m., before Plaintiff's meeting with Ng and Clendinen, Plaintiff sent an email to Ng asking for his investigative report and recorded interview. (*Id.*) Ng responded to Plaintiff on the same day at 11:06 a.m. that he was "working to see how/when we may get that investigatory report and recordings to [him]." (*Id.*) Later that day, Plaintiff met with Ng and Clendinen, where Ng and Clendinen notified Plaintiff that his employment was terminated. (Dkt. No. 51-1, Norman Decl., Ex. 1, Tull Dep. at 159:8–21; Dkt. No. 48-2, Frenzen Decl. ¶ 13, Ex. L.) After the meeting with Ng and Clendinen, Plaintiff again asked Ng for a copy of the report against him. (Dkt. No. 51-1, Norman Decl., Ex. 1, Tull Dep. at 168:15–169:4.)

After the August 11, 2023 meeting, but later on the same date, Ng sent Plaintiff a "Release Letter" via email identifying the violations of policies that led to the termination of his employment. (Dkt. No. 48-2, Frenzen Decl. ¶ 14, Ex. M at CCSF_000777-88.) The letter dated August 11, 2023 also advised Plaintiff that he was "entitled to an administrative appeal [*sic*] a 'name clearing' hearing" and that he had 30 days from receipt of the letter to request this appeal. (*Id.* at CCSF_000785.) Plaintiff confirmed receipt of the letter by email that same day and returned the signed letter without any comment on the letter's contents. (Dkt. No. 48-2, Frenzen Decl., Ex. N at CCSF_000947, CCSF_000951.)

On August 14, 2023, Plaintiff sent an email to Ng stating: "I appreciate the opportunity for the 'name clearing' appeal process, but I am declining that opportunity." (Dkt. No. 48-2, Frenzen Decl. ¶ 16, Ex. O at CCSF_000792.) In his email, Plaintiff noted that the release letter "does not state what [he] specifically did to violate the policies documented in the letter" and asked Ng to tell him what he allegedly did while he was waiting for a copy of the investigative report. (*Id.*) Ng responded that same day, confirmed that Plaintiff was waiving his right to an administrative hearing, and noted that he could not provide a summary and would "check back in with our Deputy City Attorney in regard to your request for the report." (Dkt. No. 48-2, Frenzen Decl., Ex.

P at CCSF_000958.)

Ng separately responded to Plaintiff's declination of the severance agreement and stated that the SFDA would still provide him with a severance agreement that he could review with his union representative. (Dkt. No. 48-2, Frenzen Decl., Ex. Q.)

On August 29, 2023, Ng sent an email to Plaintiff and his union representative with a draft severance agreement for consideration. (Dkt. No. 48-2, Frenzen Decl., Ex. R.) The letter advised Plaintiff that the SFDA had designated the investigative report to be confidential under Government Code § 3303(g) and asked whether Plaintiff had reconsidered his decision to decline the SFDA's offer of a "name clearing" administrative appeal. (*Id.*) Plaintiff's union representative responded on Plaintiff's behalf to convey Plaintiff declination of the severance agreement. (Dkt. No. 48-2, Frenzen Decl., Ex. S.) There was no indication in Plaintiff's communications with Ng that he was waiving his right to a name-clearing hearing because he had not received his investigative packet.

## II. PROCEDURAL HISTORY

Plaintiff commenced this action on September 19, 2024. (Dkt. No. 1.) Plaintiff brings claims against Defendants for (1) violation of California Labor Code § 1050; (2) denial of procedural due process under 42 U.S.C. § 1983; (3) denial of equal protection under 42 U.S.C. § 1983; (4) POBR violations; (5) wrongful discharge in violation of public policy; (6) disparate treatment race discrimination in violation of the California Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12940(a); and (7) retaliation in violation of the California False Claims Act, Cal. Gov. Code § 12653. (Dkt. No. 4, Complaint, ¶¶ 37–96.)

On May 18, 2026, Defendants filed the instant motion seeking summary judgment on Plaintiff's seven claims. (Dkt. No. 48.) Plaintiff opposed the motion, and Defendants filed a reply in support of their motion. (Dkt. Nos. 51–52.) The Court heard oral argument on June 22, 2026. (Dkt. No. 58.)

# ANALYSIS

## I. Legal Standard for Motion for Summary Judgment.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

When deciding a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett,* 477 U.S. 317, 323 (1986). An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson*, 477 U.S. at 248–49. A fact is "material" if it may affect the outcome of the case. *Id.* at 248.

If the party moving for summary judgment does not have the ultimate burden of persuasion at trial, that party must produce evidence which either negates an essential element of the non-moving party's claims or that party must show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once the moving party meets their initial burden, the non-moving party must go beyond the pleadings and, by its own evidence, set forth specific facts showing that there is a genuine issue for trial. *Id.* To make this showing, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). In addition, the party seeking to establish a genuine issue of material fact must adequately point a court to the evidence precluding summary judgment because a court is "not required to comb the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (citation omitted). Indeed, a district court has no independent duty "to scour the record in search of a genuine issue of triable fact." *Keenan*, 91 F.3d at 1279. If the non-moving party fails to point to evidence precluding summary judgment, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**II. Plaintiff's Remaining Claims.**

Defendants move for summary judgment on Plaintiff's seven claims against Defendants. (Dkt. No. 48.) At the hearing for this motion, Plaintiff informed the Court that he is abandoning

United States District Court
Northern District of California

the following claims: Fourth Cause of Action for POBR violations against Jenkins; Fifth Cause of Action for Wrongful Discharge in Violation of Public Policy against both Defendants; Sixth Cause of Action for violation of FEHA against Jenkins; and Seventh Cause of Action for Retaliation under Government Code § 12653 against both Defendants.

Thus, Plaintiff's remaining claims are the following: (1) First Cause of Action for violation of California Labor Code § 1050 against both Defendants; (2) Second Cause of Action for denial of procedural due process under 42 U.S.C. § 1983 against both Defendants; (3) Third Cause of Action for denial of equal protection under 42 U.S.C. § 1983 against both Defendants; (4) Fourth Cause of Action for POBR violations against the City; and (5) Sixth Cause of Action for violation of FEHA against the City. The Court addresses each of Plaintiff's five remaining claims in turn.

### A. First Cause of Action: California Labor Code § 1050 Violation against Both Defendants.

Plaintiff alleges that Defendants violated California Labor Code § 1050, which provides that "[a]ny person ... who, after having discharged an employee from the service of such person ... by any misrepresentation prevents or attempts to prevent the former employee from obtaining employment, is guilty of a misdemeanor." Cal. Lab. Code § 1050. Like defamation, blacklisting liability is precluded where there is no untrue statement. *See Newberry v. Pac. Racing Ass'n*, 854 F.2d 1142, 1152 (9th Cir. 1988) (affirming summary judgment for defendant where plaintiff offered no evidence from which a reasonable jury could conclude that the defendant's statement was untrue because the facts instead established that the statement was true). Importantly, "Labor Code [S]ection 1050 applies only to misrepresentations made to prospective employers other than the defendant." *Kelly v. Gen. Tel. Co.*, 136 Cal. App. 3d 278, 288 (Ct. App. 1982).

Plaintiff argues that, to prove his claim, he must show that, after his employment with the City ended, Defendants: made a false representation to a prospective employer about him; the Defendants knew that the representation was false; Defendants made the representation with the intent to prevent Plaintiff from obtaining employment; Plaintiff was harmed; and that Defendants' behavior was a substantial factor in causing that harm. (Dkt. No. 51 at 16 (citing CACI No. 2711: Preventing Subsequent Employment by Misrepresentation – Essential Factual Elements (Cal. Lab.

Code § 1050) Judicial Council of California Jury Instructions (2026 edition).)

**1. Direct Communications with the Alameda District Attorney's Office.**

Plaintiff argues that there were communications between the SFDA and the Alameda County District Attorney's Office. (Dkt. No. 51 at 16–17.) Plaintiff applied for a job there but did not receive any response. (*Id.*) Plaintiff alleges that Defendants defamed him in those communications by "knowingly" misrepresenting to the Alameda County District Attorney's Office that he had been terminated from the SFDA "for having committed misconduct, even though Defendants knew their investigation was a sham and that Plaintiff had not committed any misconduct." (Dkt. No. 4, Complaint, ¶ 40.)

Defendants, in response, argue that Plaintiff cannot establish essential elements of his § 1050 claim because Plaintiff presents no evidence that Defendants or any of their representatives made representations to the Alameda County District Attorney's Office about Plaintiff of any kind, let alone ones that Defendants knew were false. (Dkt. No. 48 at 16.)

The Court finds that Plaintiff fails to "identify with reasonable particularity the evidence that precludes summary judgment" regarding his § 1050 claim. *Keenan*, 91 F.3d at 1279. Plaintiff does not cite any admissible evidence to support his contention that Defendants communicated any statements about Plaintiff with the Alameda County District Attorney's Office. Plaintiff concedes that he "does not have direct evidence that Defendant communicated with the Alameda County District Attorney's Office about his employment." (Dkt. No. 51 at 17.) Plaintiff also testified that he did not tell anyone that he applied to the Alameda County District Attorney's Office and that no one at the SFDA told him that Defendants or their representatives reached out to the Alameda County District Attorney's Office regarding his application for employment. (Dkt. No. 51-1, Norman Decl., Ex. 1, Tull Dep. at 40:2– 41:25.)

Rather than identifying specific evidence, Plaintiff invokes inadmissible hearsay to support his claim. Plaintiff testified that he was "told that several members in the San Francisco DA's Office were aware that [he] applied to the DA's Office in Alameda." (Dkt. No. 51-1, Norman Decl., Ex. 1, Tull Dep. at 40:12–20.) This is inadmissible hearsay. Plaintiff also testified that either Scott Won or Glenn Pon verified with the Alameda County District Attorney's Office that Plaintiff applied for employment. (Dkt. No. 51-1, Norman Decl., Ex. 1, Tull Dep. at 40:23–41:7.)

Plaintiff, however, submits no evidence from either Won or Pon to support this contention and cannot rely upon hearsay. And even if employees in the SFDA communicated with the Alameda County District Attorney's Office, Plaintiff provides no evidence – not even hearsay – of the substance of their communication. Thus, Plaintiff fails to meet his burden to point to evidence creating a genuine dispute of material fact as to whether Defendants made any statement about Plaintiff to the Alameda District Attorney's Office.

**2. Communications Based on POST.**

In his opposition, Plaintiff offers a new theory: Defendants violated § 1050 by submitting a form to the California State Commission on Peace Officer Standards and Training ("POST") with incorrect information. (Dkt. No. 51 at 16–18.) There is no dispute that when the employment of a peace officer such as Plaintiff is terminated, the employer must send documents to POST regarding the officer's separation. (Dkt. No. 51-1, Norman Decl., Ex. 4, Deposition of Eugene Clendinen ("Clendinen Dep.") at 16:12–16.)

Plaintiff argues that the SFDA's communication to POST was false because the form indicated that he was "involuntarily separated" instead of the true statement that he was separated because of misconduct. (Dkt. No. 51 at 16.) Plaintiff testified that, in the "Affidavit of Separation" that Defendants sent to POST regarding Plaintiff's termination of employment, Defendants did not indicate that the reason for Plaintiff's separation was due to misconduct but instead falsely stated that he was "involuntarily separated." (*See* Dkt. No. 51-1, Norman Decl., Ex. 1, Tull Dep. at 186:16–189:2.) Plaintiff's argument may seem counterintuitive, since Plaintiff complains that Defendants provided a less derogatory characterization of his separation to POST (involuntary separation) than the allegedly true reason (separation because of misconduct). But Plaintiff posits that, had the SFDA indicated on the POST form that he had been separated because of misconduct, the SFDA would have been required to include the "facts pertaining to the subject of the investigation" and that anyone, such as prospective employers, reviewing those facts would see that the investigation was flawed. (Dkt. No. 51 at 18.)

The Court, finds, however, that Plaintiff provides no support in the law or factual evidence to support his argument that a separation based on misconduct requires inclusion of facts. Plaintiff fails to provide a copy of the submission to POST and instead only cites his deposition testimony

about it. (*See* Dkt. No. 51-1, Norman Decl., Ex. 1, Tull Dep. at 186:16–189:2.)[5] Thus, Plaintiff cannot meet the element of falsity based on Defendants' submission to POST.

Furthermore, Defendants argue that Plaintiff cannot establish that the form submitted to POST qualifies as a "representations to a prospective employer." (Dkt. No. 52 at 7–8.) The Court agrees that a form submitted to POST does not meet the definition of a representation to a prospective employer as stated in § 1050.

**3. Plaintiff's Failure to Show Intent.**

Finally, Plaintiff's claim under § 1050 fails because he cannot prove that Defendants had the intent to prevent Plaintiff from obtaining employment, one of the required elements Plaintiff listed above, *supra* at p. 9. Plaintiff points to no evidence that Defendants had the intent to prevent Plaintiff from obtaining employment. There is no dispute that the SFDA was required to submit the information about the termination of Plaintiff's employment to POST. The undisputed facts show that the SFDA submitted the form to POST because it was required to do so, not because it was attempting to scuttle Plaintiff's future employment.

Moreover, the only evidence of the City's motivation rebuts Plaintiff's argument because the City proffered a less derogatory reason for the termination of his employment: involuntary separation vs. separation based on misconduct. There can be no dispute that separation based on misconduct is worse than involuntary separation. Thus, based on this failure to provide any evidence of intent, Plaintiff's claim fails on this separate reason.

***

Because Plaintiff fails to point to the evidence precluding summary judgment, the Court GRANTS summary judgment on Plaintiff's claim under California Labor Code § 1050 against both Defendants.

**B. Second Cause of Action: Denial of Procedural Due Process against Defendants.**

Plaintiff brings a claim under 42 U.S.C. § 1983 and argues that Defendants violated his right to procedural due process because he has "a private interest in remaining free of unfounded charges that impugn his character and impair his freedom to obtain future employment, i.e., not

[5] The deposition transcript mentions the POST form, but it is not included in the record.



United States District Court
Northern District of California

United States District Court
Northern District of California

being fired because of baseless accusations that were inadequately investigated so as to maintain the pretext that Plaintiff had engaged in misconduct." (Dkt. No. 51 at 19.)[6] Plaintiff further contends that Defendants deprived him of his liberty interest by conducting a "sham investigation into the allegations of misconduct against him," and offering to conduct a "sham" name-clearing hearing. (*Id.* at 5, 21.) Finally, in regard to the lack of process, Plaintiff asserts that, "[e]ven if Plaintiff had participated in the [name-clearing] hearing, he would not have had a fair chance to rebut any of the vague and conclusory allegations against him." (*Id.*) By allegedly "refusing to give Plaintiff any evidence or information pertaining to the charges against him, Defendants violated Plaintiff's due process right to be free of unfounded charges that impugn his character and impair his freedom to obtain employment." (*Id.*)

Defendants move for summary judgment on the grounds that (1) Plaintiff, as an at-will employee, does not have a protected property interest in continued employment; and (2) he declined the City's offer of a name-clearing hearing to protect his alleged liberty interest. (Dkt. No. 48 at 17–18.)

"A section 1983 claim based upon procedural due process [] has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). To determine whether Plaintiff received adequate process, the Court must first address the nature of the property interests of which he was allegedly deprived. *See Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) ("[R]esolution of...whether the administrative procedures provided...are constitutionally sufficient requires analysis of the...private interests that are affected.").

Defendants argue that Plaintiff's procedural due process claim fails because public employees in California who are employed in at-will positions do not have property interests in continued employment. (Dkt. No. 52 at 9 (citing *Linder v. Golden Gate Bridge, Highway & Transportation Dist.*, No. 4:14-CV-03861 SC, 2015 WL 4623710, at *4 (N.D. Cal. Aug. 3, 2015); *Binkley v. Long Beach*, 16 Cal. App. 4th 1795, 1808 (1993).) As discussed above, there is no

[6] Plaintiff initially alleged a due process claim under 42 U.S.C. § 1983 for violation of the POBR, (Dkt. No. 4, Complaint, ¶¶ 52–55), but does not assert this argument in his opposition. Thus, Plaintiff has abandoned this theory.

dispute that Plaintiff's employment with the City was at-will. (Dkt. No. 48-2, Frenzen Decl., Exs. B, C, D.) Indeed, Plaintiff does not argue that he was entitled to a property interest as an at-will employee. Rather, Plaintiff argues that he has a "liberty" interest at stake, which the Court will analyze as a "stigma-plus" claim.

"To lodge [] a 'stigma-plus' due process claim, a plaintiff must show: (1) the public disclosure of a stigmatizing statement by the government; (2) the accuracy of which is contested; (3) plus the denial of some more tangible interest[ ] such as employment." *Chaudhry v. Aragon*, 68 F.4th 1161, 1170 (9th Cir. 2023) (citations and quotation marks omitted). As discussed above, Plaintiff asserts that Defendants' submission to POST that Plaintiff was "involuntarily separated" without including that the separation was due to misconduct was derogatory. (Dkt. No. 51 at 5, 15.) Defendants' report to POST can be interpreted as a "public disclosure of a stigmatizing statement by the government." *Chaudhry*, 68 F.4th at 1170. The Court finds that a notice of involuntary separation can meet the standard of a stigmatizing statement.

Plaintiff, however, does not present evidence to meet the third prong of the *Chaudhry* test: that he was denied employment because of Defendant's submission to POST. Plaintiff states with no citations to the record: "Plaintiff knows from his years of experience with the Oakland Police Department that when a law enforcement entity checks with POST about an applicant and sees that the applicant was 'involuntarily separated,' the reason for the adverse action would be irrelevant and the agency would immediately reject the applicant." (Dkt. No. 51 at 17.) Although Plaintiff argues that a form stating that an applicant was "involuntarily separated" would automatically preclude employment, Plaintiff has not been designated as an expert witness and cannot opine on this issue. Furthermore, Plaintiff has designated no expert on this issue. Because Plaintiff provides no other evidence that Defendant's submission to POST prevented any law enforcement agency from hiring him, Plaintiff fails to create a genuine dispute of material fact as to whether he was denied a "tangible interest." *Chaudhry*, 68 F.4th at 1170.

***

In sum, Plaintiff fails to present admissible evidence to support his claim for lack of procedural due process based his alleged liberty interest, which the Court analyzes as a "stigma-plus" theory. Accordingly, the Court GRANTS summary judgment as to Plaintiff's claim for

procedural due process against both Defendants.

**C. Third and Sixth Causes of Action: Denial of Equal Protection against Both Defendants and Disparate Treatment Race Discrimination in Violation of FEHA against the City.**

Plaintiff alleges that his employment was terminated because of his race and asserts claims under both 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the U.S. Constitution's Fourteenth Amendment and FEHA, Cal. Govt. Code § 12940(a). (Dkt. No. 4, Complaint.)

"To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (citations omitted). "The central inquiry in an Equal Protection Clause claim is whether a government action was motivated by a discriminatory purpose." *Ballou v. McElvain*, 29 F.4th 413, 422 (9th Cir. 2022); *see also Ave. 6E Invs., LLC v. City of Yuma*, 818 F.3d 493, 504 (9th Cir. 2016). A plaintiff may establish discriminatory purpose by " 'produc[ing] direct or circumstantial evidence demonstrating that a discriminatory reason more likely tha[n] not motivated' the defendant and that the defendant's actions adversely affected the plaintiff in some way." *Ave. 6E*, 818 F.3d at 504 (quoting *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1158 (9th Cir. 2013)).

To make a claim for racial discrimination under FEHA, Cal. Govt. Code § 12940(a), the employee must prove the following: (1) the employee's membership in a classification protected by the statute; (2) discriminatory animus on the part of the employer toward members of that classification; (3) an action by the employer adverse to the employee's interests; (4) a causal link between the discriminatory animus and the adverse action; (5) damage to the employee; and (6) a causal link between the adverse action and the damage. *Mamou v. Trendwest Resorts, Inc.,* 165 Cal. App. 4th 686, 713 (2008).

The Court addresses Plaintiff's claim against Jenkins and the City for Violation of the Equal Protection Clause and his claim against the City for violation of FEHA below but first discusses *Monell* liability against the City.

### 1. Liability under *Monell* against the City for Violation of the Equal Protection Clause.

Defendants argue that Plaintiff cannot make a claim for violation of the Equal Protection Clause under § 1983 against the City because Plaintiff fails to show that liability arises out of an official policy, practice or custom, failure to train, supervise or discipline, or decision to act by a final policy maker. (Dkt. No. 48 at 19–20; Dkt. No. 52 at 11.)

Section 1983 imposes liability on a governmental entity only if an official policy, practice or custom is the moving force for the violation of the constitutional right. *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978). "[M]unicipalities may be liable under § 1983 for constitutional injuries pursuant to (1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policy maker." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019).

Defendants made this argument in their opening memorandum (Dkt. No. 48 at 19), and Plaintiff did not respond (Dkt. No. 51). Defendants argue that Plaintiff has waived this argument, and Defendants are correct. The Court, though, must analyze this issue because the undisputed evidence that Defendants submitted shows that Jenkins, who made the decision to terminate Plaintiff's employment, was the final decisionmaker for the City. (Dkt. No. 48-1, Jenkins Decl., ¶ 3.) Jenkins avers in her declaration that she is "responsible for making decisions about hiring, disciplining, and releasing employees" of the SFDA. (*Id.*) Defendants do not identify evidence that any other person or entity has authority over that decision-making ability.

Thus, liability under *Monell* is attached to Jenkins's decision to terminate Plaintiff's employment. *See, e.g., Lytle v. Carl*, 382 F.3d 978, 984–89 (9th Cir. 2004) (affirming finding that school superintendent and assistant superintendent were final policymakers and rejecting argument that only the school board was the final policymaker). Because Jenkins made the decision to terminate Plaintiff's employment, the City is potentially liable for that decision.

### 2. Claims against Jenkins and the City for Violations of the Equal Protection Clause and against the City for Violation of FEHA.

Where direct evidence of a discriminatory purpose is unavailable, a plaintiff may assert claims under the Equal Protection Clause for race discrimination using the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Ballou*, 29

F.4th at 422. Similarly, a plaintiff may use the same *McDonnell Douglas* burden-shifting test for claims under FEHA. *Schechner v. KPIX-TV*, 686 F.3d 1018, 1023 (9th Cir. 2012) (citing *Guz v. Becthtel Nat. Inc*., 24 Cal. 4th 317 (2000)).

Here, there is no dispute that Plaintiff submits no direct evidence of discrimination. Jenkins, the relevant decisionmaker, denied considering Plaintiff's race or gender in her decision to release Plaintiff from his employment. (Dkt. No. 48-1, Jenkins Decl. ¶¶ 3, 8.) Plaintiff has not rebutted this evidence with any evidence of direct discrimination by Jenkins. Therefore, the Court analyzes Plaintiff's Equal Protection and FEHA claims under the *McDonnell Douglas* framework.

**a. First Step in the *McDonnell Douglas* Test: Prima Facie Case**

The first step under the *McDonnell Douglas* test is for Plaintiff to establish a prima facie case of racial discrimination. *Aragon v. Republic Silver State Disposal*, 292 F.3d 654, 658 (9th Cir. 2002), *as amended* (July 18, 2002) (citing *McDonnell Douglas*, 411 U.S. at 802). To establish a prima facie case of racial discrimination under *McDonnell Douglas*, a plaintiff must show that "(1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subjected to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably." *Aragon*, 292 F.3d at 658.

Plaintiff argues he establishes his prima facie case because (1) he is African-American; (2) he was qualified for his position; (3) he suffered an adverse employment action because his employment was terminated; and (4) non-African-American investigators received more favorable treatment during their investigations which led to the termination of their employment. (Dkt. No. 51 at 22.)

The City argues they are entitled to summary judgment on Plaintiff's claim under FEHA and the Equal Protection Clause because Plaintiff cannot establish a prima facie case, and the City has legitimate, nondiscriminatory reasons for its decision to terminate Plaintiff's employment. (Dkt. No. 48 at 23–24.)

The parties do not dispute the first three prima facie case elements. First, Plaintiff is African American, (Dkt. No. 4, Complaint, ¶ 86), and thus, a member of a protected class. FEHA prohibits employers from discriminating against employees on several grounds, including race.

United States District Court
Northern District of California

Cal. Gov't Code § 12940(a). The Equal Protection Clause affords the same protection. *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) ("The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike.") (internal citation and quotation marks omitted).

Second, during the hearing for this motion, the parties indicated that they do not dispute that Plaintiff was qualified for the position he held at the time of his termination of employment. Third, the parties do not appear to dispute that the termination of Plaintiff's employment qualifies as an adverse employment action. Accordingly, the Court concludes that Plaintiff's termination of employment is an adverse employment action. *See Guz*, 24 Cal. 4th at 355 (listing termination as an example of an adverse employment action).

The sole remaining issue is whether Plaintiff establishes the fourth element of the prima facie case: whether similarly situated individuals outside his protected class were treated more favorably. Plaintiff argues that similarly situated non-African American investigators Jack Friedman and Rami Khoury were treated more favorably during investigations of their conduct. (Dkt. No. 51 at 22.) These theories fall into three major categories: (1) the manner in which Friedman, Khoury, and Plaintiff were notified of the investigation into their alleged wrongdoing (the "notice" issue), (2) the provision of a *Skelly* hearing, and (3) the manner of investigation of Friedman, Khoury, and Plaintiff (the "manner of investigation" issue).

First, with regard to the notice issue, Plaintiff contends that Friedman and Khoury were served their notice of administrative leave after work hours and that they were allowed to take their personal effects with them. (Dkt. No. 51 at 7–8.) Plaintiff contends that he, in contrast, was notified during office hours, marched through the office in front of colleagues, and not permitted to take his personal belongings. (*Id.* at 9.)

Second, in arguing the *Skelly* hearing issue, Plaintiff contends that Friedman and Khoury had a hearing before their employment was terminated but that he did not receive one. (*Id*. at 8.)

Third, with respect to the manner of the investigation, Plaintiff contends that Friedman and Khoury were given their investigative packets, which were not deemed to be confidential, upon

request, and therefore that Friedman and Khoury had an opportunity to respond to specific, articulated allegations against them, but Plaintiff was denied his investigative packet, which was deemed confidential; that the San Francisco City Attorney's Office conducted interviews for Friedman's and Khoury's investigations but did not do so for Plaintiff's investigation; and that DeGuia, the lead investigator for Friedman and Khoury, did not make any credibility determinations of witnesses but did make credibility determinations against Plaintiff. (Dkt. No. 51 at 23.)

The Court finds that Plaintiff has established a prima facie case and thus the analysis advances to the next step.

**b. Second Step in the *McDonnell Douglas* Test: Defendants' Nondiscriminatory Reason for Plaintiff's Termination of Employment**

If Plaintiff establishes a prima facie case, the burden shifts to Defendants to "articulate a legitimate, nondiscriminatory reason" for Plaintiff's termination of employment. *See Aragon*, 292 F.3d at 658.

Defendants argue that Jenkins made her decision to terminate Plaintiff's employment because she "lost confidence in Plaintiff's ability to effectively lead the Bureau of Investigations due to his conduct, which was reported to her by other SFDA employees, and confirmed in DeGuia's investigation." (Dkt. No. 48-1, Jenkins Decl. ¶¶ 4-7; Dkt. No. 48-2, Frenzen Decl., Ex. X, Jenkins Dep. at 21:3–22:16; 23:22–25:5; 43:10–44:4; 56:10–57:15; 76:12–18.) Specifically, Jenkins avers in her declaration that she based her assessment of Plaintiff on reports from other employees and her own observations of Plaintiff. (Dkt. No. 48-1, Jenkins Decl., ¶ 4.) The SFDA employees reported to her that Plaintiff was "abusive, condescending, and used his proximity" to Jenkins as part of her executive protection team to "threaten Investigators with transfer to other assignments or with termination." (*Id.*) Jenkins also concluded that she could not trust Plaintiff to "convey accurate information about the Investigators he was tasked with managing because he made intentionally false representations to me about his reasons for reassigning or rescheduling certain Investigators." (*Id.* at ¶ 5.) In addition, Jenkins thought that "[s]ome of the transfers and schedule changes he initiated appeared to [] be retaliatory." (*Id.*)

The Court concludes that Defendants have established a nondiscriminatory reason for

terminating Plaintiff's employment.

**c. Third Step in the *McDonnell Douglas* Test: Pretext**

Because Defendants articulate a nondiscriminatory reason for Plaintiff's termination of employment, the burden shifts back to Plaintiff to demonstrate that the reason was pretextual. *See Aragon*, 292 F.3d at 658–59. To establish pretext, a plaintiff may present either direct or circumstantial evidence. *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998), *as amended* (Aug. 11, 1998). Where, as here, a plaintiff presents circumstantial evidence, it must be "specific" and "substantial." *Id.* However, the Ninth Circuit has instructed that "very little evidence is necessary to raise a genuine issue of fact regarding an employer's motive; any indication of discriminatory motive may suffice to raise a question that can only be resolved by a fact-finder." *Nicholson v. Hyannis Air Serv.*, Inc., 580 F.3d 1116, 1127 (9th Cir. 2009).

To support his argument that Defendants' proffered reason for his termination was pretextual, Plaintiff points to the same evidence he used to establish that non-African-American SFDA employees were given more favorable treatment (i.e., the fourth element of the prima facie case), *supra* at pp. 17–18. Plaintiff is entitled to use that evidence for both purposes. *See Chuang v. Univ. of California Davis, Bd. of Trs.*, 225 F.3d 1115, 1128 (9th Cir. 2000).

Plaintiff cannot establish that Defendants' nondiscriminatory reason for his termination of employment was pretextual because he cannot show that Jenkins, the decisionmaker, participated in any of the actions in the three categories of actions that allegedly show pretext. Because Jenkins was the final decisionmaker regarding Plaintiff's employment, Plaintiff must show that the pretextual actions allegedly giving more favorable treatment to Friedman and Khoury during their investigations were actions taken by Jenkins. In addition, Plaintiff could also show pretext if he can show that DuBain, his other supervisor, participated in the pretextual activity under the "cat's paw" theory, but he also fails to point to evidence to support that theory.

Both the Supreme Court in analyzing federal labor law and California courts recognize the cat's paw theory that a plaintiff can impute liability to a decisionmaker who acts under the influence of another employee with improper animus. *Staub v. Proctor Hosp.*, 562 U.S. 411, 415–16 (2011) (addressing claim under federal statute preventing bias against employees who take military leave); *Reeves v. Safeway Stores, Inc.*, 121 Cal. App. 4th 95, 116–20 (2004). However, as

Judge Gilliam described in *Miller,* no federal or California state court has applied the cat's paw theory unless the ultimate decisionmaker was influenced by the aggrieved employee's supervisor. *Miller v. T-Mobile, Inc.*, 2025 WL 3085722, at *9–10 (N.D. Cal. Nov. 5, 2025).

Plaintiff testified that he reported in "hybrid" manner directly to Jenkins or to DuBain. (Dkt. No. 48-2, Frenzen Decl., Ex. A, Tull Dep. at 120:25–121:3.) Thus, the only person who could influence Jenkins in an unlawful manner under a cat's paw theory is DuBain. The Court concludes that Plaintiff does not identify evidence that either Jenkins or DuBain participated in the pretextual activity for the reasons explained below.

First, Plaintiff does not present evidence regarding the notice issue - that Jenkins or DuBain had any part in the manner in which Friedman, Khoury, or Plaintiff were notified of their investigations. Defendants point out that *Plaintiff* was the person who made the decision to provide Friedman and Khoury with notices of termination of employment after hours and to allow them to take their belongings. (Dkt. No. 48-2, Frenzen Decl., Ex. A, Tull Dep. at 145:11–146:20; 151:21–152:10; Dkt. No. 51-1, Norman Decl., Ex. 1, Tull Dep. at 147:11–18.) Plaintiff cannot allege that Jenkins and DuBain treated him unequally, compared with Friedman and Khoury, because Plaintiff does not identify evidence establishing that they made any decision about how to treat Friedman and Khoury.

Moreover, Jenkins and DuBain also did not make the decisions about how to treat Plaintiff in notifying him of his investigation. Shavaun Tolliver, the only witness who was asked this question in deposition, did not identify Jenkins or DuBain as the person who made that decision and did not provide an answer to that question. (Dkt. No. 48-2, Frenzen Decl., Ex. Y, Deposition of Shavaun Tolliver ("Tolliver Dep.") at 19:8–20:4.) Rather, the evidence shows that Guzman and Moreland, Plaintiff's subordinates, notified Plaintiff that he was being placed on administrative leave because of the investigation and refused to allow him to take his personal belongings with him. (Dkt. No. 51-2, Norman Decl., Ex. A, Tull Dep. at 50:19–55:12; 139:18–140:22.)

Second, Plaintiff cannot show that Jenkins or DuBain had any role in determining whether he had a *Skelly* hearing. Jenkins testified that she did not make that decision and that instead,

Clendinen, Shavaun Harris,[7] and Ng were the people who addressed that issue. (Dkt. No. 64, Declaration of Lateef Gray ("Gray Decl."), Ex. 2, Jenkins Dep. at 51:5–14.) Additionally, Plaintiff cannot prove that the failure to provide him with a *Skelly* hearing was pretextual because the only admissible evidence shows that Friedman and Khoury did not receive *Skelly* hearings. (Dkt. No. 48-2, Frenzen Decl., Ex. Y, Tolliver Dep. at 21:16–22:3.) Plaintiff cites only hearsay to support his contention that Friedman and Khoury received *Skelly* hearings. (Dkt. No. 51 at 4 (citing Dkt. No. 51-1, Norman Decl., Ex. 1, Tull Dep. at 154:13–157:16).)

In addition, the City explains that, as an at-will employee, Plaintiff had no pre-termination hearing rights under the applicable Memorandum of Understanding ("MOU") between the City and his union Municipal Executives Association ("MEA") and that the right to a *Skelly* hearing is reserved for permanent civil service employees. (Dkt. No. 48-2, Frenzen Decl., Ex. W at CCSF_000370; Ex. Y, Tolliver Dep. at 21:16–22:3; 24:7–12; 28:21–29:14.) Plaintiff does not present any evidence in response that shows that he was entitled to a *Skelly* hearing. Thus, Plaintiff cannot show that the decision not to provide him with a *Skelly* hearing was pretextual.

Third, with regard to the manner of Plaintiff's investigation, DeGuia testified in his deposition that he only spoke with Jenkins as a witness twice or to schedule meetings with Jenkins to ask follow-up questions regarding her interviews. (Dkt. No. 51-1, Norman Decl., Ex. 7, DeGuia Dep. at 29:11–30:6.) Jenkins testified that she received "multiple updates" from DeGuia during Plaintiff's investigation. (Dkt. No. 51-1, Norman Decl., Ex. 5, Jenkins Dep. at 42:14–21.) Plaintiff does not identify evidence that Jenkins or DuBain instructed DeGuia regarding the manner in which DeGuia was to conduct the investigation.[8]

With regard to the decision not to provide Plaintiff with his investigative report, Clendinen made the decision regarding Plaintiff's investigative packet. (Dkt. No. 64, Gray Decl., Ex. 3, Clendinen Dep. at 25:19–26:7.)

---

[7] Jenkins referred to "Shavaun Harris," but the only person with a similar name is Shavaun Tolliver, whom others had identified as an employee of the Human Resources department who was involved in the investigation.

[8] The Court is not required to scour the record to find evidence. *Keenan*, 91 F.3d at 1279 (a district court has no independent duty "to scour the record in search of a genuine issue of triable fact.") The Court, nonetheless, not only scoured the record but also gave Plaintiff an opportunity to provide additional evidence, after the hearing and full briefing, on the subject of the identity of actor and decisionmakers for the pretextual activity. (Dkt. No. 62.)

Furthermore, regarding Plaintiff's argument that the San Francisco City Attorney's Office instead of the SFDA conducted interviews for Friedman's and Khoury's investigations but did not do so for Plaintiff's investigation, Plaintiff does not identify evidence addressing who made that decision. When given the opportunity to provide evidence on this issue, Plaintiff merely pointed to testimony from DeGuia that Ana Gonzales, the Chief Assistant District Attorney, asked DeGuia to interview witnesses and draft a report, along with the assistance of Tolliver from Human Resources. (Dkt. No. 64, Gray Decl., Ex. 4, DeGuia Dep. at 20:24–21:25.) As noted above, DeGuia did not receive any advice on how to conduct the investigation. (Dkt. No. 51-1, Norman Decl., Ex. 7, DeGuia Dep. at 41:20–22.) Thus, Plaintiff does not present evidence regarding who decided to exclude the City Attorney's office from the interviews for Plaintiff's investigation, let alone whether those decisions could be attributed to Jenkins or DuBain. Indeed, Jenkins testified in her deposition that she did not even know whether the City Attorney's Office was involved. (Dkt. No. 51-1, Norman Decl., Ex. 5, Jenkins Dep. at 71:19–72:14.)

The Court finds that the evidence also shows that Jenkins did not make the decision not to provide Plaintiff with the investigatory report. Jenkins found out that fact only after the allegations in this case, and Jenkins testified in her deposition that she cannot remember who told her about that decision. (Dkt. No. 48-2, Frenzen Decl., Ex. X, Jenkins Dep. at 93:24–95:7.) Clendinen testified that "we determined that the report was confidential" but did not identify who was involved in that decision. (Dkt. No. 64, Gray Decl., Ex. 3, Clendinen Dep. at 25:25–26:7.)

With regard to the recording of interviews, DeGuia also testified that Tolliver told him that recording interviews for Plaintiff's investigation was not necessary because the investigation was an "intrapersonnel matter." (Dkt. No. 51-1, Norman Decl., Ex. 7, DeGuia Dep. at 45:14–46:23.)

Finally, there is no evidence that anyone asked DeGuia to make a credibility determination of Plaintiff. When asked why he made no credibility assessments about Friedman and Khoury, DeGuia said: "That was not my role." (*Id.* at 47:3–8.) He was not asked who defined his role.

Given that Plaintiff cannot show that Jenkins or DuBain participated in or instructed any person to effectuate the alleged pretextual actions, Plaintiff cannot show pretext by Jenkins directly and cannot show pretext by Jenkins and the City based on DuBain's actions under the "cat's paw" theory.

Thus, Plaintiff fails to establish a triable issue of fact regarding pretext. At this stage then, Plaintiff's claims fail because he cannot rebut Defendants' non-discriminatory reason for the termination of his employment.

***

Accordingly, the Court GRANTS summary judgment on Plaintiff's Equal Protection claim against both Defendants and race discrimination in violation of FEHA against the City.

**D. Fourth Cause of Action: POBR Violations against the City.**

Plaintiff argues that the City violated the Public Safety Officers Procedural Bill of Rights Act ("POBR") by: (1) refusing to give Plaintiff a copy of the investigative packet used to terminate his employment; (2) failing to provide him the opportunity to review and rebut the adverse comments placed in his personnel file; and (3) failing to provide Plaintiff a "true name-clearing hearing." (Dkt. No. 51 at 25–29.) The Court addresses each of Plaintiff's arguments in turn.

**1. California Tort Claims Act's Procedural Requirement.**

As a threshold matter, because Plaintiff seeks damages for each alleged POBR violation (Dkt. No. 4 at 18), Plaintiff must allege he submitted his administrative claim to the City before filing suit, as required under the California Tort Claims Act. *See* Cal. Govt. Code §§ 910, 945.4. As a prerequisite to filing suit against a public entity, California law requires a plaintiff to "timely file a claim for money or damages with the public entity." *Lozada v. City & Cnty. of San Francisco*, 145 Cal. App. 4th 1139, 1151 (2006) (citing Cal. Govt. Code § 911.2). "The failure to do so bars the plaintiff from bringing suit against that entity." *Id.* This claim filing requirement applies to claims under the POBR. *Id.* at 1153–73. Plaintiff was required to present his claim to the City "not later than one year after the accrual of the cause of action." Cal. Govt. Code § 911.2(a).

Plaintiff presented his claim under the POBR to the City on February 9, 2024, and the City rejected his claim on March 20, 2024. (Dkt. No. 4, Complaint, ¶ 4.) On June 28, 2024, the United States Equal Employment Opportunity Commission issued a Right-To-Sue letter. (*Id.* ¶ 5.) There appears to be no dispute that Plaintiff satisfied the California Tort Claims Act's procedural requirement prior to filing suit. As such, the Court finds that Plaintiff timely filed a claim for

damages with the City. *Cf. Bearden v. Alameda Cnty.*, No. 18-CV-02495-JSW, 2019 WL 13067383, at *8 (N.D. Cal. Apr. 5, 2019) (finding that the plaintiff's cause of action under the POBR failed because the plaintiff did not allege he submitted his administrative claim to the public entity before filing suit).

**2. Application of the POBR to Plaintiff.**

The POBR sets forth a list of basic rights and protections which must be afforded to all peace officers by the public entities that employ them. *Baggett v. Gates*, 32 Cal. 3d 128, 135 (1982). Where, as here, a law enforcement agency investigates alleged misconduct by an officer employee, the procedural protections in the POBR "balance the public interest in maintaining the efficiency and integrity of the police force with the police officer's interest in receiving fair treatment." *Jackson v. City of Los Angeles*, 111 Cal. App. 4th 899, 909 (2003) (citation omitted).

As a sworn California peace officer since 1989, Plaintiff was at all relevant times entitled to the rights and protections of the POBR. *See Holmes v. Dist. Att'y*, 68 Cal. App. 4th 1523, 1526 (1998) (concluding that a District Attorney investigator under state law is a peace officer) (citing Pen. Code § 830.1). Indeed, on July 3, 2023, SFDA Chief Administrative Officer Clendinen sent Plaintiff a communication indicating that Plaintiff "h[as] a right to representation and all rights afforded to [him under the] POBR including Cal Gov't Code Section 3303." (Dkt. No. 51-1, Norman Decl., Ex. 11.)

**3. The City's Failure to Provide Plaintiff a Copy of his Investigative Packet under Cal. Govt. Code § 3303(g).**

Plaintiff argues that the City violated POBR § 3303(g) by denying him a copy of the investigative report used to support his termination of employment. (Dkt. No. 51 at 25; Dkt. No. 4, Complaint, ¶ 71.) Section 3303(g), in pertinent part, provides:

> The public safety officer shall be entitled to a transcribed copy of any notes made by a stenographer or to any reports or complaints made by investigators or other persons, except those which are deemed by the investigating agency to be confidential. No notes or reports that are deemed to be confidential may be entered in the officer's personnel file.

Cal. Govt. Code § 3303(g).

The Court finds that there is a genuine dispute of material fact as to whether the City

violated Plaintiff's right under POBR § 3303(g) to receive "any reports or complaints made by investigators or other persons" before the termination of his employment. *See* Cal. Govt. Code § 3303(g). In *Gilbert*, the California Sixth District Court of Appeal reasoned that:

> Under section 3303, subdivision (g), the repercussion of deeming an item confidential is that it may not be entered in the officer's personnel file. The implication is that the employing department may not make adverse personnel decisions concerning the officer based on reports, or the portions thereof, deemed confidential and not made available to the officer.

*Gilbert v. City of Sunnyvale*, 130 Cal. App. 4th 1264, 1290 (2005).

Plaintiff has presented evidence to show that the City refused to provide DeGuia's investigative report, which the City deemed to be confidential, and then used DeGuia's report for the adverse decision to terminate Plaintiff's employment. There is no dispute that Plaintiff never received DeGuia's investigative report. In addition, there is no dispute that Jenkins decided to fire Plaintiff in part due to DeGuia's investigative report.

In August 2023, DeGuia completed his investigation and prepared a report of his findings dated August 4, 2023. (Dkt. No. 48-2, Frenzen Decl. ¶ 6, Ex. E at CCSF_000564–67.) Jenkins admitted that she based her decision to terminate Plaintiff's employment based at least partially on DeGuia's report: "the investigative report prepared by Julius DeGuia following his investigation of the allegations made about Tull prior to Tull's release" confirmed "[her] conclusion that Tull was conducting himself in a manner that caused me to lose confidence in his ability to be an effective leader of the Bureau of Investigation." (Dkt. No. 48-1, Jenkins Decl., ¶ 7.) This evidence is sufficient to support Plaintiff's claim. *See McMahon v. City of Los Angeles*, 172 Cal. App. 4th 1324, 1333 (2009) ("The Department's obligation to disclose the underlying investigative materials turns on whether they qualify as 'personnel files that *are used* or *have been used* to determine that officer's qualifications for employment, promotion, additional compensation, or termination or other disciplinary action' under Government Code section 3306.5, subdivision (a)) (emphasis in original).

The City, in defending its decision not to provide DeGuia's investigative report to Plaintiff, contends that the City declined Plaintiff's request for the report *after* Plaintiff declined to participate in a name-clearing hearing because he was no longer an employee at that time of the

request and thus not entitled to the report. (Dkt. No. 48 at 22.) The City argues that "Plaintiff's right to review his personnel files under POBR section 3306.5 ended when his employment with the City ended." (Dkt. No. 48 at 22 (citing *Barber v. Dep't of Corr. & Rehab.*, 203 Cal. App. 4th 638, 651 (2012) (concluding that the plaintiff officer was not entitled to review his personnel and internal affairs records pursuant to a broad records request under POBR § 3306.5 after he was terminated).) However, *Barber* is distinguishable from the instant action because in *Barber*, the defendant did not violate the POBR in part because, before the effective date of termination, the defendant provided the plaintiff officer notice of termination and copies of all records relied upon in terminating him. 203 Cal. App. 4th at 652.

Moreover, the evidence shows that Plaintiff requested the investigative report *before* the termination of his employment. On the morning of August 11, 2023, Plaintiff asked for a copy of DeGuia's investigative report and recorded interview but did not receive them. (Dkt. No. 48-2, Frenzen Decl. ¶ 13, Ex. L.) Later that same day, Ng and Clendinen informed Plaintiff that his employment was terminated. (Dkt. No. 51-1, Norman Decl., Ex. 1, Tull Dep. at 159:8–21.) Three days later, on August 14, 2023, only after Plaintiff declined the name-clearing hearing, Ng advised Plaintiff that the SFDA considered the investigative report to be confidential because of concern about revealing the identities of witnesses who were interviewed during the investigation. (Dkt. No. 48-2, Frenzen Decl., Ex. Y, Tolliver Dep. at 30:19–31:20; Dkt. No. 51-1, Norman Decl., Ex. 1, Tull Dep. at 168:15–169:4.). Based on this evidence, interpreted in the light most favorable to the non-moving party (Plaintiff), a jury could conclude that the City based its decision to fire Plaintiff on DeGuia's investigative report, which the City refused to provide to Plaintiff while he was still employed by the City.

***

For these reasons, the Court DENIES summary judgment on Plaintiff's claim that the City violated POBR § 3303(g) by denying Plaintiff a copy of his investigative packet prior to his termination of employment.

/ / /

/ / /

**4. The City's Failure to Provide Plaintiff an Opportunity to Review and Rebut the Adverse Comments Included in Plaintiff's Personnel File under Cal. Govt. Code §§ 3305 and 3306.**

Plaintiff argues that the City violated POBR §§ 3305 and 3306 by placing adverse comments in Plaintiff's personnel file without allowing Plaintiff the opportunity to review or respond to the comments. (Dkt. No. 51 at 25; Dkt. No. 4, Complaint, ¶ 71.) In summary, those POBR provisions give an officer (1) an opportunity to review and sign any instrument containing an adverse comment before it is entered in his personnel file or in any other file used for any personnel purposes, Cal. Govt. Code § 3305, and (2) a 30–day period to provide a written response to any adverse comment placed in his file, Cal. Govt. Code § 3306.

The Court concludes that there is a genuine dispute of material fact as to whether the City violated POBR §§ 3305 and 3306. Plaintiff argues that the investigative report was used for personnel purposes – the termination of his employment – and he never had an opportunity to review the investigative report. Those facts are not in dispute.

The City argues that it was not required to provide DeGuia's investigative packet to Plaintiff because it contained confidential material. (*See* Dkt. No. 48 at 22.) On August 29, 2023, Ng sent an email to Plaintiff to tell him that SFDA had designated the investigative report to be confidential under Government Code section 3303(g). (Dkt. No. 48-2, Frenzen Decl., Ex. R.) However, as one court explained, "an officer's review and comment rights under sections 3305 and 3306 do not extend to review of materials temporarily deemed confidential by an agency under section 3303 for purposes of an active investigation[,]" but that opinion does not "absolve an investigating agency from compliance with those statutes once the investigatory period has ended." *Oakland Police Officers' Assn. v. City of Oakland*, 63 Cal. App. 5th 503, 523 (2021), *as modified on denial of reh'g* (May 13, 2021). Thus, even if the investigative report were confidential, the City could not withhold it after the investigation concluded.

***

In sum, the Court DENIES summary judgment on Plaintiff's claim that the City violated POBR §§ 3305 and 3306 by including adverse comments in Plaintiff's personnel file without allowing Plaintiff the opportunity to review or file a written response to said adverse comments. ///

/ / /

**5. The City's Failure to Provide Plaintiff a True Name-Clearing Hearing under Cal. Govt. Code § 3304(b).**

Plaintiff argues that the City violated POBR § 3304(b) by denying Plaintiff the opportunity to have a "true name-clearing hearing." (Dkt. No. 51 at 25; Dkt. No. 4, Complaint, ¶ 71.)[9] The City, in response, contends that Plaintiff was offered a post-termination name-clearing hearing in his release letter, which he declined. (Dkt. No. 48 at 20–23.) POBR § 3304(b) assures a public safety officer the right to an administrative appeal when any punitive action is taken against the officer. Cal. Govt. Code § 3304(b).

The Court concludes that Plaintiff fails to adequately point to evidence to support his claim that the City violated POBR § 3304(b). Rather, the undisputed evidence shows that on April 11, 2023, Ng sent Plaintiff a release letter via email identifying his violations of policies that led to his termination of employment. (Dkt. No. 48-2, Frenzen Decl. ¶ 14, Ex. M at CCSF_000777-88.) The release letter advised Plaintiff that he was "entitled to an administrative appeal a 'name clearing' hearing" and that he had 30 days from receipt of the letter to request this appeal. (*Id.* at CCSF_000785.) Plaintiff confirmed receipt of the letter by email that same day and returned the signed letter without any comment on the letter's contents. (Dkt. No. 48-2, Frenzen Decl., Ex. N at CCSF_000947, CCSF_000951.)

On August 14, 2023, Plaintiff sent an email to Ng stating: "I appreciate the opportunity for the 'name clearing' appeal process, but I am declining that opportunity." (Dkt. No. 48-2, Frenzen Decl. ¶ 16, Ex. O at CCSF_000792.) Ng responded that same day and confirmed that Plaintiff was waiving the right to an administrative hearing. (Dkt. No. 48-2, Frenzen Decl., Ex. P at CCSF_000958.) While Plaintiff noted that the release letter did not state what he specifically did to violate the policies documented in the letter, Plaintiff does not point the Court to evidence precluding summary judgment on this specific claim under the POBR. (*See id.* at CCSF_000959.)

Courts have acknowledged that POBR § 3304(b) "does not provide for an automatic administrative appeal, but merely requires that an *opportunity* for such an appeal be provided.... [T]he procedural details for implementing the provisions for an administrative appeal are to be formulated by the local agency." *Crupi v. City of Los Angeles*, 219 Cal. App. 3d 1111, 1120 (Ct.

[9] The Court interprets Plaintiff's claim under POBR § 3304(d) as a § 3304(b) claim because § 3304(b) concerns administrative appeals.

App. 1990), *reh'g denied and opinion modified* (May 18, 1990) (internal citation and quotation marks omitted). However, when, as here, "the scope of administrative appeal hearing is not prescribed by personnel rules, agency regulations, memoranda of understanding, or customary agency practices, the adequacy of the appeal procedure afforded must be measured according to constitutional due process principles." *Binkley*, 16 Cal. App. 4th at 1807.

***

For the same reasons the Court grants summary judgment on Plaintiff's procedural due process claim, *supra* at pp. 11–13, the Court GRANTS summary judgment on Plaintiff's claim under POBR § 3304(b).

**CONCLUSION**

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' motion for summary judgment. The Court DENIES summary judgment on Plaintiff's claims that the City violated the Public Safety Officers Procedural Bill of Rights Act, Cal. Govt. Code §§ 3303(g), 3305, and 3306. The Court GRANTS summary judgment on Plaintiff's First Cause of Action for violation of California Labor Code § 1050 against both Defendants, Second Cause of Action for denial of procedural due process under 42 U.S.C. § 1983 against both Defendants, Third Cause of Action for denial of equal protection under 42 U.S.C. § 1983 against both Defendants, Fourth Cause of Action for violation of POBR § 3304(b) against the City, and Sixth Cause of Action for violation of FEHA against the City.

The Court also GRANTS summary judgment to Defendants on the claims that Plaintiff abandoned: Fourth Cause of Action for POBR violations against Jenkins; Fifth Cause of Action for Wrongful Discharge in Violation of Public Policy against both Defendants; Sixth Cause of Action for violation of FEHA against Jenkins; and Seventh Cause of Action for Retaliation under Government Code § 12653 against both Defendants.

/ / /

/ / /

/ / /

/ / /

/ / /



United States District Court
Northern District of California

Because Plaintiff filed exhibits in support of his opposition under seal, this Order is accordingly also filed under seal. The parties shall file a joint statement notifying the Court whether any portions of this Order shall remain under seal by August 7, 2026. The Court will address Plaintiff's motion to seal in a separate order.

**IT IS SO ORDERED**.

Dated: July 24, 2026

SALLIE KIM
United States Magistrate Judge